Argued November 14; affirmed December 5, 1939

## ROSE CITY COMPANY *v.* FREEWATER FINANCE CO. ET AL.

(96 P. (2d) 766)

Department 1.

*Will H. Masters* and *Roscoe P. Hurst,* both of Portland, for appellants.

*D. P. Price* and *Joe P. Price,* both of Portland, for respondent.

BEAN, J. The defendant, Freewater Finance Company, purchased the property in question from the plaintiff, Rose City Company, and on October 28, 1932, as a part of the purchase price, executed and delivered

to plaintiff its mortgage in the sum of $6,500, with interest at the rate of six per cent per annum, covering said property. That mortgage became delinquent and the plaintiff commenced proceedings to foreclose the mortgage and applied to the court for appointment of a receiver to take charge of the property and collect the rents, which application the court allowed.

Prior to the commencement of the foreclosure proceedings, the defendant Freewater Finance Company had conveyed the property to the defendant H. S. Murray, by deed, but the deed had never been recorded and the deed from the Rose City Company to the Freewater Finance Company had never been recorded. After these foreclosure proceedings had been commenced the plaintiff learned that the property had been conveyed to defendant Murray and it then filed an amended complaint making him a party defendant. An answer to the amended complaint was filed by Murray. Thereafter negotiations were entered into between Roscoe P. Hurst, attorney for defendant Murray, and the plaintiff and D. P. Price, attorney for plaintiff, with reference to some settlement of the foreclosure proceedings. After considerable negotiations, as claimed by defendant Murray, it was agreed that if the defendants would assign to the plaintiff all the rents and profits to be received from the property being foreclosed, and if defendants would execute a written approval of the accounts of the receiver, who had been appointed by the court to collect the rents, and if the defendants recorded the two deeds, one from the plaintiff to the Freewater Finance Company and one from the Freewater Finance Company to the defendant Murray, so as to complete the chain of title to the property, then the plaintiff would dismiss the foreclosure

proceedings and would not proceed to foreclose the mortgage again for one year from the date of the assignment of rents, provided conditions beyond their control did not arise, forcing them to foreclose sooner.

Mr. D. P. Price prepared the papers and assignment of the rents and the approval of the receiver's report for the Murray's signatures, and delivered them to Mr. Hurst, who sent them to the Murrays, which they signed and returned to Mr. Hurst. The two deeds were recorded. Mr. Hurst notified Mr. Price that he had these papers and informed Mr. Price that he would like to hold them for a while until the matter of his fees was adjusted. He also informed Mr. Price that he would hold the documents subject to Price's order, and that whenever Price wanted them he would turn them over, to all of which Mr. Price agreed. Plaintiff failed to dismiss the foreclosure proceedings then pending and later set the same down for trial.

Plaintiff filed its complaint seeking to foreclose the mortgage on March 19, 1936. The mortgage was second and subject to a mortgage in favor of the Portland Trust and Savings Bank in the sum of $37,500. Plaintiff, under the terms of the mortgage, applied to the court and a receiver was appointed to take charge of the property and collect the rents and profits during the pendency of the suit. The receiver immediately qualified and took charge and acted up to the time of the decree.

On April 19, 1938, defendants Murray filed their answer. The answer did not disclose just what interest the defendants Murray claimed in the property. Later it was disclosed that defendant H. S. Murray held an unrecorded deed from the Freewater Finance Company,

dated March 1, 1934, and was also in possession of an unrecorded deed from the Rose City Company to the Freewater Finance Company, dated October 25, 1932. On April 28, 1938, defendant H. S. Murray recorded both deeds in Multnomah county, Oregon.

The case slumbered until it was set for trial January 27, 1939. On January 26, 1939, attorney for defendants tendered to the attorney for the plaintiff a rent assignment and a signed approval of the receiver's report and consent that the suit might be dismissed by plaintiff without prejudice. The rent assignment was to the Portland Trust and Savings Bank, with a blank space for the approval of the Rose City Company. The Portland Trust and Savings Bank refused to accept the assignment and the Rose City Company refused to approve the same, and the assignment and other papers were returned to Mr. Hurst for defendants Murray. The Portland Trust and Savings Bank had notified defendants Murray by letter dated December 13, 1938, that on account of the changed conditions it would not accept the rent assignment. On February 9, 1939, defendants Murray filed a supplemental answer setting forth the alleged plea in abatement alleging certain negotiations and claiming a certain agreement entered into for the dismissal of the suit and extending the time of payment of the plaintiff's mortgage for one year. Defendants Murray allege: "by the terms of which agreement the defendants were to assign to plaintiff all rents and income * * * and to approve and ratify the accounts of the receiver," and to record the deeds held by H. S. Murray and out of the proceeds from the rental and income to pay to itself court costs incurred in this cause of $30.80 and the attorney's fees of $100.

A general denial to the supplemental answer was interposed by plaintiff. The case was heard on defendants' plea in abatement before Judge John P. Winter, and after trial and argument the case was taken under advisement, and on May 5, 1939, the court denied defendants' plea in abatement.

The rent assignment was prepared in April, 1938. The document containing the rent assignment contained the following language, which largely influenced the trial court in deciding that there was no agreement for the dismissal of the suit, namely:

"It is the understanding that this assignment shall not in any way affect or modify the terms of the said mortgage or the notes secured thereby and, particularly, shall not extend the time of payment thereof, nor shall it prevent the mortgagees from taking any action in the collection of said notes and mortgages, nor the foreclosure thereof."

In addition to the stipulation contained in this assignment of rents, Mr. Charles H. Stewart, an officer of plaintiff corporation, testified that the Portland Trust and Savings Bank sold actual mortgages for which they were trustee, and that they were serial mortgages, and that:

"* * * There was a first mortgage for $37,500 on this apartment house out here which had been sold, —some of it; not all of it,—to customers of the Portland Trust and Savings Bank. These notes are drawn serially and begin to come due—some of them had come due and were in the hands of our customers who wanted their money. It is not a rotten first mortgage, but there is two we had to deal with. Our subsidiary, The Rose City Company, had acquired title to this on a trade and sold it to Murray and took in part payment a second mortgage back, also something else, and it is on that second mortgage that the Rose City Company now

seeks to take title to the property. Now we brought suit originally in 1936 in order to get action, and frankly, at that time had he been willing to have assigned the rentals it was not in such bad shape that we would have wanted to proceed with foreclosure, but he told us to go to the devil. And we thought as trustee in a rather difficult period that we were held accountable for the income from that property, and at that time asked him for rental assignments which he refused to give. We therefore went into court and had a receiver appointed and dropped the action at the time because we had then corralled the income so that we could not be accused of negligence in handling the property as a trustee.

"* * * I have always hated to foreclose property. Nevertheless, we began to get in an embarrassing position, which you thought we could not get in, because people were beginning to complain. * * * We did not get the assignment. Now there was a lot of horseplay going on between you (Hurst) and Mr. Price that I knew nothing about.

"* * * And months before this last action was asked for I said, 'It doesn't make any difference whether we have got a rental assignment or not. We have had a woman who has been in there who has got one of these past due notes who says, 'I have searched the records and your own company owns this property and you are going to pay this first mortgage note.' * * * We have got to pay it. * * * And I have repeatedly told Murray * * * that he had to take care of the delinquency that existed on this first mortgage, because we didn't have the right to extend the mortgage. It was sold and held by different people, * * *.

"Now Mr. Hurst's contention was that we promised a year's extension from last April if he would execute this and if we were not forced through other causes to proceed. Now we claim that we have been forced. We have had payment of these mortgages or these notes demanded of us, and we are in an embarrassing position. * * * I insist that we never did, because I

think we are too cautious to agree that we would not proceed for a year. * * * I can point you to an individual holder of these notes, a woman that has demanded that we make payment to her of her past due note in this first mortgage, * * *."

On December 13, 1938, plaintiff wrote to Mr. H. S. Murray, stating, among other things, as follows: "Unless you can make good the delinquency, (on the first mortgage) we must proceed with the foreclosure of the second, and having taken title, ourselves pay off such of the first mortgage notes as are delinquent."

The condition in the negotiations for the dismissal of the suit and giving defendants time is shown to exist and renders the agreement, as claimed by defendants, ineffectual.

Mr. Murray's attorney testified that the plaintiff did not want to put in writing that they would not foreclose within a year because subsequent events might arise forcing them to do so.

There seems to be no controversy over the fact that the plaintiff made the negotiations conditionally that they would wait if they were not compelled to proceed. It is not believed that either of the parties had in mind that plaintiff would be compelled by mandamus or some legal action to proceed with the foreclosure, but that in the ordinary course of the business the circumstances would be such that they were compelled to proceed, as testified by Mr. Stewart.

We think the learned trial judge was correct in holding that there was no binding completed agreement for the dismissal of the case and not to foreclose again within one year.

The judgment of the lower court is therefore affirmed.

RAND, C. J., and KELLY and ROSSMAN, JJ., concur.